IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| KENNETH PARNELL, | : |
| Petitioner, | : |
| vs. | : CIVIL ACTION NO. 13-0343-WS-C |
| UNITED STATES OF AMERICA, | : CRIMINAL ACTION NO. 08-0280-WS |
| Respondent. | |

### REPORT AND RECOMMENDATION

Petitioner, Kenneth Parnell, has filed a motion to vacate, set aside or correct his sentence, pursuant to 28 U.S.C. § 2255 (Doc. 79). This action has been referred to the undersigned for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Following consideration of all relevant pleadings in this case, it is recommended that Parnell's § 2255 motion be summarily dismissed as time-barred pursuant to 28 U.S.C. § 2255(f)(1).

### FACTUAL BACKGROUND

On September 29, 2009, Parnell entered a counseled guilty plea to Count 2 of the Indictment (*see* Doc. 73, Guilty Plea Hearing, at 13-14), which charged petitioner with using a facility of interstate commerce—a computer connected to the internet—to knowingly attempt to persuade, induce, entice and coerce an individual—Pr3ttyalli—to engage in sexual activity under circumstances that would constitute a criminal offense

by a person under the Code of Alabama (§ 13A-6-62(a)[1]), in violation of 18 U.S.C. § 2422(b)[2] (Doc. 1, at 3).[3] Parnell was sentenced, on February 19, 2010, to the statutory

---

[1]   "A person commits the crime of rape in the second degree if . . . [b]eing 16 years old or older, he or she engages in sexual intercourse with a member of the opposite sex less than 16 and more than 12 years old; provided, however, the actor is at least two years older than the member of the opposite sex." *Id.*

[2]   "Whoever, using the mail or any facility or means of interstate or foreign commerce, . . . knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life." 18 U.S.C. § 2422(b).

[3]   The parties agreed in the Plea Agreement that the Factual Resume, which was incorporated by reference into the Plea Agreement, was true and correct. (Doc. 57, Plea Agreement, at ¶ 8.) The Factual Resume, in turn, reads, in relevant part, as follows:

> On August 18, 2008, Detective Shannon Payne of the Mobile Police Department was working in an undercover capacity, portraying a thirteen-year[-]old girl named Allison Jones in an internet chat room. At 6:55:23 p.m., Detective Payne, as Allison Jones, was contacted by an individual using the Yahoo screen name "Southern_Man2003" who was later identified as defendant **PARNELL**. **PARNELL** engaged Det. Payne, as Allison Jones, in conversation, asking at 6:56:15 whether the 13-year[-]old had a boyfriend and at 6:58:24 whether he could date her. At 7:14:29 p.m., **PARNELL** asked whether the girl would meet him that weekend, and said at 7:19:05 p.m. that the "kind of fun" he wanted to engage in with the girl that weekend was "sex." Three minutes later, **PARNELL** asked the girl a second time how old she was, and when Det. Payne answered, "13 i said" **PARNELL** responded, "ok."
>
> The conversation continued, with **PARNELL** telling the girl that she might get pregnant because "i do not like rubber" and asking where she lived so that he could plan a meeting. **PARNELL** discussed logistics with the 13-year[-]old girl, asking her to ask her grandmother for twenty dollars to offset the cost of **PARNELL's** gas to drive to meet her, and noting that he would need a hotel room. The conversation ended at 9:02:50 p.m.
>
> The next afternoon, on August 19, 2008, **PARNELL** chatted again via Yahoo Messenger with Det. Payne portraying 13-year[-]old Allison Jones. **PARNELL** asked if the meeting was still on, and said that he was busy babysitting his 13-year[-]old sister. Det. Payne, as Allison Jones, asked if she was too old for **PARNELL**, reminding him that she was 13. **PARNELL** responded, "ok I want to date u if I can I am 38." **PARNELL** then clarified that if they dated, they would "have sex" and that he wanted to perform oral sex on the girl.

(Continued)

mandatory minimum of 120 months imprisonment. (Doc. 73, Sentencing Hearing, at 7.) The Court entered judgment on February 25, 2010. (Doc. 63.)

Although Parnell did appeal his conviction and sentence (Doc. 64 (written notice of appeal filed March 4, 2010); *see also* Doc. 66 (notice and appellate filing fee)), ultimately appointed counsel moved to withdraw from further representation and filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967)

---

> On August 21, 2008, **PARNELL** again chatted via Yahoo Messenger with the 13-year[-]old girl, indicating that he wanted to engage in intercourse with her when they met, and confirming that "u r 13 and I am 38." **PARNELL** then told the girl that he wanted to have a baby with her and discussed arrangements to meet that Saturday morning. Det. Payne gave **PARNELL** a telephone number for **PARNELL** to call the next day so that they could talk on the phone.
>
> On August 22, at approximately 4:21 p.m., **PARNELL** called the 13-year[-] old girl at the phone number Det. Payne had given **PARNELL** the evening before. Det. Payne portrayed the girl during the telephone call and confirmed that he still wanted to meet her, though he did express concern that he would get in trouble if she reported that he "raped" her. The conversation ended after a few minutes because **PARNELL** was calling from a pay phone, and shortly thereafter, **PARNELL** continued the conversation with the girl online via Yahoo Messenger. A meeting was set for the following morning at a coffee shop in Mobile.
>
> On August 23, 2008, **PARNELL** arrived at the coffee shop in Mobile where he had arranged to meet the 13-year[-]old girl. Upon his arrival at approximately 8:35 a.m., **PARNELL** was arrested. Following his arrest, **PARNELL** was taken to Mobile Police Department headquarters and interviewed after waiving his Miranda rights. **PARNELL** initially claimed that he had come to Mobile that morning to look for a job. After initially denying that he had arranged to meet 13-year[-old] Allison Jones for sex, **PARNELL** confessed that he had used the Yahoo internet instant messaging service to chat with the girl, and had arranged to meet her to have sex, believing that she was 13 years old. **PARNELL** also confessed that he had made the telephone call the day before to talk to the 13-year[-]old. Had the sexual activity occurred as **PARNELL** planned, **PARNELL** could have been charged with rape in the second degree under § 13A-6-62 of the laws of Alabama.

(Doc. 57, Factual Resume, at 1-3 (emphasis in original).)

in the Eleventh Circuit (Doc. 78, Opinion, at 2). On December 9, 2010, a panel of the Eleventh Circuit granted counsel's motion to withdraw and affirmed Parnell's conviction and sentence. (*Id.*)

> Our independent review of the entire record reveals that counsel's assessment of the relative merit of the appeal is correct. Because independent examination of the entire record reveals no arguable issues of merit, counsel's motion to withdraw is **GRANTED**, and Parnell's conviction and sentence are **AFFIRMED**.

(*Id.*) This opinion was issued as mandate on January 7, 2011. (Doc. 79, at 3.)

The instant motion to vacate was filed by Parnell in this Court on or about June 27, 2013. (*See* Doc. 79, at 11.) Therein, petitioner contends that in light of the Supreme Court's statement in *National Federation of Independent Business v. Sebelius*, ___ U.S. ___, 132 S.Ct. 2566, 183 L.Ed.2d 450 (Jun. 28, 2012) (hereinafter, "*National Federation*") that "[t]he power to *regulate* commerce presupposes the existence of commercial activity to be regulated[,]" *id.* at ___, 132 S.Ct. at 2586 (emphasis in original), and given that the phrase "any sexual activity" contained in § 2422(b) does not in any manner constitute commercial activity, Congress exceeded its authority under the Commerce Clause when it included the "any sexual activity" language in § 2422(b). (*See* Doc. 79, at 1-8.) Thus, according to Parnell, he is "actually innocent" of violating § 2422(b) (Doc. 79, at 1). *See McQuiggin v. Perkins,* ___ U.S. ___, 133 S.Ct. 1924, 1928, 185 L.Ed.2d 1019 (2013) ("We hold that actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in *Schlup* and *House*, or, as in this case, expiration of the statute of limitations.").

## CONCLUSIONS OF LAW

Rule 4 of the Rules Governing Section 2255 cases provides, in pertinent part, that "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior

4

proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party." 28 U.S.C. foll. § 2255, Rule 4(b). It is clearly appropriate for a district court to summarily dismiss time-barred motions to vacate prior to any answer or other pleading by the United States. *See, e.g., United States v. Johnson,* 2012 WL 3070972, *1 (M.D. Fla. July 26, 2012); *Jones v. United States*, 2012 WL 3704759, *1 (N.D. Ga. July 18, 2012), *report and recommendation adopted,* 2012 WL 3704837 (N.D. Ga. Aug. 27, 2012).

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") was enacted on April 24, 1996 and, pertinent to this case, added a new subdivision to 28 U.S.C. § 2255 providing for a one-year period of limitations within which federal prisoners must file their motions to vacate pursuant to 28 U.S.C. § 2255. *Akins v. United States*, 204 F.3d 1086, 1089 (11th Cir.), *cert. denied,* 531 U.S. 971, 121 S.Ct. 410, 148 L.Ed.2d 316 (2000).

> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of--
>
> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Subsections (2), (3), and (4) of § 2255(f) clearly do not apply to petitioner's case and, therefore, the timeliness of Parnell's motion must be calculated under § 2255(f)(1) based upon the date on which his conviction became final. In this case, the Eleventh Circuit affirmed petitioner's conviction and sentence on December 9, 2010, and since Parnell did not file a petition for writ of certiorari in the Supreme Court (*see* Docket Sheet), his conviction became final ninety (90) days later, on March 9, 2011, that is, the date on which the time for filing a petition for certiorari expired. *Clay v. United States*, 537 U.S. 522, 524-525 & 532, 123 S.Ct. 1072, 1075 & 1079, 155 L.Ed.2d 88 (2003) ("This case concerns the starting date for the one-year limitation. It presents a narrow but recurring question on which courts of appeals have divided: When a defendant in a federal prosecution takes an unsuccessful direct appeal from a judgment of conviction, but does not next petition for a writ of certiorari from this Court, does the judgment become 'final' for postconviction relief purposes (1) when the appellate court issues its mandate affirming the conviction, or, instead, (2) on the date, ***ordinarily 69 days later***, when the time for filing a petition for certiorari expires? In accordance with this Court's consistent understanding of finality in the context of collateral review, and the weight of lower court authority, we reject the issuance of the appellate court mandate as the triggering date. For the purpose of starting the clock on § 2255's one-year limitation period, *we hold, a judgment of conviction becomes final when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction.* In 1997, petitioner Erick Cornell Clay was convicted of arson and distribution of cocaine base in the United States District Court for the Northern District of Indiana. *On November 23, 1998, the Court of Appeals for the Seventh Circuit affirmed his convictions. The court's mandate issued on December 15, 1998. . . . The time in which he*

6

***could have petitioned for certiorari expired on February 22, 1999, 90 days after entry of the Court of Appeals' judgment, see this Court's Rule 13(1), and 69 days after the issuance of the appellate court's mandate.*** . . . We hold that, for federal criminal defendants who do not file a petition for certiorari with this Court on direct review, ' 2255's one-year limitation period starts to run when the time for seeking such review expires." (emphasis supplied)); *see also Stewart v. United States*, 646 F.3d 856, 857 (11th Cir. 2011) ("We dismissed his direct appeal on February 6, 2003, based on an appeal-waiver provision in his plea agreement. Stewart did not seek *certiorari* review of that dismissal, rendering his judgment final on May 7, 2003."); *Close v. United States*, 336 F.3d 1283, 1285 (11th Cir. 2003) ("'The time to file a petition for writ of certiorari runs from the date of entry of the judgment or order sought to be reviewed, and not from the issuance date of the mandate.'"). Thus, Parnell's one-year limitations period for filing his § 2255 motion began running on March 9, 2011 and expired on March 9, 2012. And, of course, it is because Parnell's motion to vacate comes some fifteen and one-half months following the expiration of his one-year limitations period that petitioner seeks the "gateway" haven set forth in *McQuiggin, supra.* (*See* Doc. 79.)

      A federal court can consider the merits of an untimely § 2255 motion only if the petitioner establishes that he is factually innocent of the crime for which he was convicted, *see San Martin v. McNeil,* 633 F.3d 1257, 1268 (11th Cir.) ("The actual innocence exception is 'exceedingly narrow in scope,' and the petitioner must demonstrate that he is factually innocent rather than legally innocent."), *cert. denied sub nom. San Martin v. Tucker,* \_\_\_\_ U.S. \_\_\_\_, 132 S.Ct. 158, 181 L.Ed.2d 73 (2011), or if he establishes that the limitations period should be equitably tolled, *Johnson v. United*

*States*, 340 F.3d 1219, 1226 (11th Cir. 2003) ("We have emphasized [] that equitable tolling applies only in truly extraordinary circumstances. . . . Appellant bears the burden of establishing that he is entitled to this extraordinary relief."), *aff'd,* 544 U.S. 295, 125 S.Ct. 1571, 161 L.Ed.2d 542 (2005); *Jones v. United States*, 304 F.3d 1035, 1039-1040 (11th Cir. 2002) ("The *petitioner* has the burden of proving entitlement to equitable tolling by showing that 'extraordinary circumstances that were both beyond his control and unavoidable even with diligence' prevented filing the petition on time." (emphasis in original)), *cert. denied*, 538 U.S. 947, 123 S.Ct. 1622, 155 L.Ed.2d 490 (2003). Parnell makes no argument that he is entitled to equitable tolling of the one-year limitations period, and since "there is nothing in the record to support its application[,]" *Stevens v. United States*, 2013 WL 3458152, *2 n.2 (N.D. Miss. July 9, 2013), the undersigned concentrates on a consideration of petitioner's argument that he is "actually innocent" of attempt under § 2422(b) (*see* Doc. 79).

Parnell is, of course, correct that the Supreme Court in *McQuiggin* held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or, as in this case, expiration of the statute of limitations." *Id*. at ___, 133 S.Ct. at 1928. However, the Supreme Court also notably cautioned that "tenable actual-innocence gateway pleas are *rare*[.]" *Id*. (emphasis supplied). "'[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Id*., quoting *Schlup v. Delo,* 513 U.S. 298, 329, 115 S.Ct. 851, 868, 130 L.Ed.2d 808 (1995) (other citation omitted). The "new" evidence Parnell relies upon does not consist of the examples set forth in *Schlup,* 513 U.S. at 324, 115 S.Ct. at 865 ("exculpatory scientific

evidence, trustworthy eyewitness accounts, or critical physical evidence") and upon which most arguments founder;[4] instead, it is petitioner's contention, as aforesaid, that the Supreme Court's recognition in *National Federation* that Congress' regulation of commerce presupposes commercial activity establishes that § 2422(b)'s "other sexual activity" exceeds Congress' power under the Commerce Clause since such activity is not commercial in nature, thereby establishing his "actual innocence" of the § 2422(b) charge. *Cf. Bousley v. United States*, 523 U.S. 614, 616, 623 & 624, 118 S.Ct. 1604, 1608, 1611 & 1612, 140 L.Ed.2d 828 (1998) ("Petitioner pleaded guilty to 'using' a firearm in

---

[4] Petitioner's argument would founder on this basis as well as he offers no new exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence, which establishes his actual innocence of attempt under § 2422(b). And, indeed, the evidence set forth in the factual resume and incorporate into the plea agreement is more than sufficient to support Parnell's plea of guilty to Count 2 of the Indictment (*see* Doc. 57, Factual Resume, at 1-3). *Compare United States v. Hardy,* 2013 WL 2338254, *1 & *2 (11th Cir. May 29, 2013) ("At trial, the government presented the testimony of Charles McMullen, who previously worked in an undercover capacity for the Florida Attorney General's Child Predator Cybercrime Unit. In April 2011, McMullen, posing as a 12-year-old boy named 'Paul' logged into a teen-chat website and received a private message from Hardy. Paul informed Hardy that he was 12 years' old. Through a series of online conversations, Hardy and Paul discussed numerous sexual acts in graphic detail and made plans for Hardy to drive to meet Paul. Within five days of speaking with Paul, Hardy drove from his home in Georgia to the address in Florida where Paul claimed that he lived. Upon arriving at the address, law enforcement arrested Hardy, and he told law enforcement that, had he not been arrested, he only intended to 'hang out' with Paul. . . . We have determined that a defendant possessed the specific intent to persuade, induce, entice, or coerce minors to engage in criminal sexual activity where the evidence at trial showed that the defendant (1) initiated contact with an undercover agent who was posing as three minor girls, (2) repeatedly asked the minor to engage in oral sex and sexual intercourse, (3) posted pictures of his genitalia, (4) made arrangements to meet the minors, and (5) arrived at the scheduled time and place to meet one of the minors.") *with United States v. Weiss,* 510 Fed.Appx. 794, 2013 WL 692699, *1 (11th Cir. Feb. 16, 2013) ("To obtain a conviction for attempt under 18 U.S.C. § 2422(b), the government must prove: (1) that the defendant acted with the kind of culpability required for the crime he was charged with attempting, and (2) that he engaged in conduct constituting a substantial step toward its commission. An actual minor victim need not exist to support a conviction under § 2422(b). If a defendant arranges through an adult intermediary to have sex with a supposed minor, that conduct is sufficient to support a conviction. In *Lanzon*, the defendant chatted online with an undercover agent about having sex with a 14-year-old girl who was ostensibly the agent's girlfriend's daughter. Although no such girl existed, we affirmed the defendant's conviction under § 2422(b)." (internal citations and quotation marks omitted)).

violation of 18 U.S.C. § 924(c)(1) in 1990. Five years later we held in *Bailey v. United States*, 516 U.S. 137, 144, 116 S.Ct. 501, 506, 133 L.Ed.2d 472 (1995), that § 924(c)(1)'s 'use' prong requires the Government to show 'active employment of the firearm.' Petitioner meanwhile had sought collateral relief under 28 U.S.C. § 2255, claiming that his guilty plea was not knowing and intelligent because he was misinformed by the District Court as to the nature of the charged crime. We hold that, although this claim was procedurally defaulted, petitioner may be entitled to a hearing on the merits of it if he makes the necessary showing to relieve the default. . . . Petitioner's claim may still be reviewed in this collateral proceeding if he can establish that the constitutional error in his plea colloquy has probably resulted in the conviction of one who is actually innocent. To establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him. . . . It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency. . . . In this case, the Government maintains that petitioner must demonstrate that he is actually innocent of both 'using' and 'carrying' a firearm in violation of § 924(c)(1). But petitioner's indictment charged him only with 'using' firearms in violation of § 924(c)(1). And there is no record evidence that the Government elected not to charge petitioner with 'carrying' a firearm in exchange for his plea of guilty. Accordingly, petitioner need demonstrate no more than he did not 'use' a firearm as that term is defined in *Bailey*. If, on remand, petitioner can make that showing, he will then be entitled to have his defaulted claim of an unintelligent plea considered on its merits." ).[5]

---

[5]     And although this Court does not find that *Bousley* provides any basis for
(Continued)

Petitioner's argument in this regard, however, is specious. As even Parnell points out (Doc. 79, at 2), the Eleventh Circuit recently reiterated that § 2422(b) does not exceed Congress' power under the Commerce Clause. *United States v. Slaughter,* 708 F.3d 1208, 1211 n.1 (11th Cir. Feb. 11, 2013), *cert. denied*, 2013 WL 2155838 (June 24, 2013).[6] Moreover, the Supreme Court in *National Federation* did not overrule *United States v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), *see* 132 S.Ct. 2585 (citing *Lopez*), which reiterated the three broad categories of activities that Congress may regulate and protect under its commerce power, including "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities." 574 U.S. 558, 115 S.Ct. at 1629 (citations omitted). And it is, of course, under this broad category of activity that courts, including this Court and the Eleventh Circuit, have recognized that § 2422(b) does not exceed Congress' power under the Commerce Clause, inasmuch as "the internet is 'an instrumentality of interstate commerce,' and [] Congress 'has the power to regulate the internet' and 'to prohibit its use for harmful or immoral purposes regardless of whether those purposes would have a primarily intrastate impact.'" *United States v. Schumaker*, 479 Fed.Appx. 878, 884-885 (11th Cir. May 24, 2012) (quoting *United States v. Hornaday*, 392 F.3d 1306, 1311 (11th Cir. 2004)), *cert. denied*, ___ U.S. ___, 133 S.Ct. 387, 184 L.Ed.2d

---

petitioner's "actual innocence," that is, his factual innocence of violating § 2422(b), *see* 523 U.S. at 623, 118 S.Ct. at 1611 ("'[A]ctual innocence' means factual innocence, not mere legal insufficiency."), further consideration of his spurious claim does not detain the undersigned.

     [6]    If *National Federation* truly had any implications with respect to § 2422(b), the Eleventh Circuit in *Slaughter* undoubtedly would have discussed such implications since *National Federation* arrived in the Supreme Court from the Eleventh Circuit Court of Appeals.

229 (2012); *compare id. with United States v. Taylor,* 2012 WL 3522528, *3 (S.D. Ala. Aug. 14, 2012) ("Even though [§2422(b)'s] reference to the instrumentalities of interstate commerce is, in the defendants' terminology, a 'jurisdictional hook' rather than the target of the statute, the provision is constitutional under the second *Lopez* category."). Thus, *Slaughter* comes as no surprise in the wake of *National Federation* as § 2422(b) represents a constitutional exercise of Congress' power under the Commerce Clause because it prohibits the use of an instrumentality of interstate commerce—the internet—for the harmful purpose of furthering sexual activity with minors. Indeed, the reason *National Federation* does not overrule this Circuit's precedent interpreting *Lopez* is because *National Federation* involved a requirement that individuals take activity, as opposed to what exists here which is § 2422(b)'s prohibition of conduct. *Cf. United States v. Henry,* 688 F.3d 637, 641 n.5 (9th Cir. 2012) (noting that *National Federation* involved a requirement that individuals take action as opposed to § 922(o)'s prohibition of conduct and refusing to find that the Supreme Court's decision overruled its decision in *Stewart*), *cert. denied,* ___ U.S. ___, 133 S.Ct. 996, 184 L.Ed.2d 773 (2013). And finally, but of no less import, no court considering similar attacks on other statutes have "landed on" the side of the petitioners making those arguments. *Compare Stevens, supra*, 2013 WL 3458152, at *2-4 (rejecting petitioner's reliance on *National Federation* and his argument that even though he pled guilty to two counts of the production of child pornography under § 2251(a) "his crimes were non-economic and completely intrastate, and thus, there is no valid authority by which Congress could regulate his conduct in this case.") *with United States v. Stacey,* 2013 WL 1891342, *3 (W.D. Pa. May 6, 2013) ("This Court concludes . . . that [the Supreme Court's] narrowly-defined holding [in *National Federation*] does not undermine existing case law that SORNA does not exceed

Congress's authority under [the] Commerce Clause.") *United States v. Moreno,* 2013 WL 375533, *2 (D.Minn. Jan. 31, 2013) ("*Sebelius* has not changed the constitutional validity of 18 U.S.C. § 922.") and *United States v. Williams,* 2012 WL 3242043, *1 & *4 (S.D. Fla. Aug. 7, 2012) (declining to dismiss indictment charging defendant with engaging in sex trafficking of minor girls in violation of 18 U.S.C. § 1591 because his interstate commerce argument—based on *National Federation*—had no merit).

In light of the foregoing, there is no question but that *National Federation* did not change the constitutional validity of 18 U.S.C. § 2422(b). Deprived of such argument, Parnell's concurrent *McQuiggin* gateway argument fails. Stated differently, petitioner has no basis whatsoever to argue that he is factually innocent of violating § 2422(b)—a constitutional exercise of Congress' power to regulate and protect under the Commerce Clause—and, therefore, the instant habeas corpus attack on his conviction and sentence is due to be dismissed, with prejudice, as time-barred.

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the undersigned recommends that a certificate of appealability in this case be denied. 28 U.S.C. foll. § 2255, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1).  A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2243(c)(2).  Where, as here, a habeas petition is being denied in its entirety on procedural grounds without reaching the merits of an underlying constitutional claim, "a COA should issue [only] when the prisoner shows . . . that jurists of reason

would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000). Given the applicability of the one-year limitations period in this case, a reasonable jurist could not conclude that this Court is in error for summarily dismissing Parnell's motion to vacate, nor could a reasonable jurist conclude that petitioner should be allowed to proceed further with respect to his claims. *Slack, supra,* 529 U.S. at 484, 120 S.Ct. at 1604 ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further."). Accordingly, petitioner is not entitled to a certificate of appealability.

Rule 11(a) further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation. *Brightwell v. Patterson,* CA 11-00165-WS-C, Doc. 14 (order from Eleventh Circuit denying petitioner a certificate of appealability in a case in which this exact procedure was outlined in the report and recommendation); *see also Castrejon v. United States,* 2011 WL 3241817, *20 (S.D. Ala. Jun. 28, 2011) (providing for the same procedure), *report and recommendation adopted,* 2011 WL 3241580 (S.D. Ala. July 29, 2011); *Griffin v. DeRosa*, 2010 WL 3943702, at *4 (N.D. Fla. Sept. 20, 2010) (providing for same procedure), *report and recommendation adopted sub nom. Griffin v. Butterworth,* 2010 WL 3943699 (N.D.Fla. Oct. 5, 2010).

## CONCLUSION

The Magistrate Judge recommends that the instant motion to vacate (Doc. 857) be summarily dismissed as time-barred pursuant to 28 U.S.C. § 2255(f)(1). Petitioner is not entitled to a certificate of appealability and, therefore, he is not entitled to appeal *in forma pauperis*.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D.ALA. L.R. 72.4. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 19th day of July, 2013.

                           s/WILLIAM E. CASSADY
                           **UNITED STATES MAGISTRATE JUDGE**